### McKANE v. BURKE et al.|

(Circuit Court, D. Nevada. September 24, 1904.)

#### No. 776.

1. FEDERAL COURTS—JURISDICTION OF DEFENDANTS—LOCAL ACTIONS.

A suit in equity to recover shares of stock in a corporation of another state, which are not alleged to be held by any defendant who resides within the state in which the suit is brought, is not one to establish a claim to "personal property within the district," within the meaning of Rev. St. 738, or section 8 of the judiciary act of March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], in which a federal court may bring in a nonresident defendant by substituted service; nor does the fact that the principal defendant, although a nonresident, enters a general appearance, authorize the court to bring in other nonresident defendants by constructive service.

In Equity. On motion to set aside service of subpœna.

James T. Boyd, for the motion.
Key Pittman and W. B. Pittman, opposed.

HAWLEY, District Judge (orally). This is a suit in equity, brought by the complainant to recover of and from certain named defendants 50,000 shares of stock in the Tonopah Extension Mining Company, a corporation organized and existing under and by virtue of the laws of Arizona, and doing business within this state at Tonopah, which is alleged to have been obtained through the wrongful and unlawful acts of certain of the defendants. The complainant obtained from this court an order for the constructive service of a subpœna by publication upon each and all of the defendants who were alleged to be nonresidents of this state.

The defendant the Home Trust Company, a corporation organized and existing under the laws of the state of Pennsylvania in the city of Pittsburg, in that state, the transfer agent of said Tonopah Extension Mining Company for the transfer and reissuance of the stock of the company, and upon whom an injunction herein was served to prevent the transfer or issuance of the stock in controversy, and the defendant John M. Burke, who may be designated

as the main defendant in the case, a resident and citizen of the state of Washington, have each voluntarily filed their general appearance herein. A general appearance waives all objections to the form or manner of service of the subpœna, including the objection that the defendant was not "found" and did not reside within the district. 1 Foster, Fed. Pr. § 101. The defendants Paul Gaston, Watson B. Rulon, David W. Dicky, and James S. Spilman have filed their special appearance, and move the court to set aside the service of the writ of subpœna made upon them "upon the ground that the defendants, and each of them, reside without the district of Nevada, and said service was made and had without the district of Nevada." Constructive service can only be made in a suit in equity "to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought." Act March 3, 1875, c. 137, § 8, 18 Stat. 472, Rev. St. § 738 [U. S. Comp. St. 1901, p. 513]; 1 Desty, Fed. Pro. § 25, p. 146; Ex parte Graham, Fed. Cas. No. 5,657, and authorities there cited. Shares of stock are personalty, not realty. "A share of stock is not real estate, is not land, nor an hereditament, nor an interest in either of them." 1 Cook on Stock. & Cor. § 12. In Kilgour v. New Orleans Gaslight Co., 2 Woods, 144, Fed. Cas. No. 7,764, it was held that the shares of stock in an incorporated company held and claimed by a nonresident of the district where the company has its domicile or is engaged in business cannot be considered "personal property within the district," so as to authorize the court in a suit in which complainant sets up title to the stock to order the holder to be constructively served in the manner provided by the statute. In Parsons v. Howard, 2 Woods, 1, Fed. Cas. No. 10,777 Bradley, Circuit Justice, said:

"In this country constructive service by publication is generally prescribed and allowed; but, as it has been held that the federal courts have no means of effecting constructive service, such cases cannot be brought in them unless the nonresident defendants voluntarily appear."

The 50,000 shares of stock in the Tonopah Extension Mining Company to which complainant claims he is entitled are not alleged or shown to be within this district. The corporation was not created by the laws of this state. Its domicile is in Arizona. "The situs of shares of stock for most purposes is in the state by which the corporation was created, and they can be levied upon in that state only." Clark on Corp. 260; 1 Cook on Stock. & Corp. § 485.

Complainant, in his argument, called the attention of the court to the distinction which exists between shares of stock in a corporation and the certificates of stock (2 Thomp. on Corp. § 2357), and that issue of certificate is unnecessary (1 Thomp. on Corp. § 1140; 2 Thomp. on Corp. §§ 2377, 2378). 2 Thomp. on Corp. §§ 2786, 2787, relate purely to the situs of the stock for the purpose of seizure by attachment or execution. They relate to certain statutory provisions of the state, and the procedure therein. The author states that "the effect of such a statutory provision necessarily is to make the situs of corporate shares, for the purpose of the levy

of an execution or attachment, the situs of the corporation itself." If the Tonopah Extension Mining Company had been incorporated in this state, the argument of complainant upon these points would be deserving of serious consideration, especially in so far as it is coupled with the proposition that jurisdiction is given to this court to determine the questions involved herein by reason of the general appearance made by the Home Trust Company. No authorities have been cited by either counsel upon this point, and the court has been somewhat at sea, and has been compelled to enter upon a voyage of discovery as to the real effect, if any, that is to be given to the fact of the general appearance filed by the Home Trust Company. This subject is incidentally mentioned in Jellenik v. Huron Copper Min. Co., 177 U. S. 1, 8–14, 20 Sup. Ct. 559, 562–564, 44 L. Ed. 647, and other matters applicable to this case discussed. It is not on all fours with the present case, but it does sustain the suggestion heretofore made as to the conditions which, if they existed, would have authorized the service by publication upon the nonresident defendants. That case was originally brought and tried before Judge Severens in the Circuit Court of Michigan. He held that stock in a Michigan corporation is personal property, and its situs follows the domicile of the legal owner, except in those instances where, for special purposes, the Legislature has localized it; that in a suit to establish their rightful title and ownership by persons claiming equitable title to stock of a Michigan corporation a federal court of that district cannot, by publication of notice, acquire jurisdiction of nonresident holders of the legal title to such stock. Jellenik v. Huron Copper M. Co., 82 Fed. 778. An appeal was taken to the Supreme Court of the United States, and the decision of Judge Severens was reversed. Mr. Justice Harlan, in delivering the opinion of the court, said:

"One of the objects of the present suit was to remove an incumbrance or cloud upon the title to certain shares of the stock of a Michigan corporation. * * * The plaintiffs alleged that they were the equitable owners of that stock, although the legal title was in certain of the defendants. The relief asked was a decree establishing their rightful title and ownership; and, in order that such a decree might be obtained, the defendants referred to were ordered to appear, plead, answer, or demur; but, as they refused to do so, the Circuit Court decided that it could not proceed further. * * * The question to be determined on this appeal is whether the stock in question is personal property within the district in which the suit was brought. If it is, then the case is embraced by the act of 1875, c. 137, and the Circuit Court erred in dismissing the bill. * * * It is sufficient for this case to say that the state under whose laws the company came into existence has declared, as it lawfully might, that such stock is to be deemed personal property. That is a rule which the Circuit Court of the United States sitting in Michigan should enforce as part of the law of the state in respect of corporations created by it. The stock held by the defendants residing outside of Michigan who refused to submit themselves to the jurisdiction of the Circuit Court being regarded as personal property, the act of 1875 must be held to embrace the present case, if the stock in question is 'within the district' in which the suit was brought. * * * We are of opinion that it is within Michigan for the purposes of a suit brought there against the company—such shareholders being made parties to the suit—to determine whether the stock is rightfully held by them. The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the ben-

efit of the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner. *This principle is not affected by the fact that the defendant is authorized by the laws of Michigan to have an office in another state, at which a book showing the transfers of stock may be kept.* * * * The corporation being brought into court by personal service of process in Michigan, and a copy of the order of court being served upon the defendants charged with wrongfully holding certificates of the stock in question, every interest involved in the issue as to the real ownership of the stock will be represented before the court. We think the Circuit Court may rightfully proceed under the act of 1875 for the purpose of determining such ownership, and that in dismissing the bill error was committed."

That opinion recognizes the general rule, now firmly established in the federal and state courts, that a corporation has its domicile and residence alone within the bounds of the sovereignty which created it, and that it is incapable of passing personally beyond that jurisdiction. The italicized portion of the opinion, to which we call especial attention, clearly shows that the fact of the Arizona corporation having appointed the Home Trust Company of Pennsylvania as its agent for the registry of stock, etc., does not affect the question under consideration.

As was said by Andrews, J., in delivering the opinion of the court in Plimpton v. Bigelow, 93 N. Y. 592, 600:

"We do not doubt that shares for the purpose of attachment proceedings may be deemed to be in the possession of the corporation which issued them, but only at the place where the corporation by intendment of law always remains, to wit, in the state or country of its creation. In all other places it is an alien. It may send its agents abroad, or transact business abroad, as any other inhabitant may do, without passing personally into the foreign jurisdiction or changing its legal residence. But such agents are not the corporation, and do not represent the corporation in respect to rights as between the corporation and its shareholders incident to the ownership of shares."

It results, from an extended examination of the authorities, which are not in all respects entirely uniform, and some doubt and confusion might arise therefrom unless the real principles involved herein are probed to the bottom, that the Tonopah Extension Mining Company, not having been incorporated in this state, and no fact alleged in the bill of complaint that the shares of stock in controversy are "within this district," service by publication upon nonresident defendants (unless they enter a general appearance) cannot be sustained.

In Ashley v. Quintard (C. C.) 90 Fed. 84, on a motion to vacate service by publication of an attachment, and to discharge the attachment upon special appearance of nonresident defendants, which was granted, the suit was brought in Ohio, and attachment served in Ohio upon the defendant Ann Arbor Railroad Company by garnishment, and it appeared and answered that it was a corporation organized in the state of Michigan, having its principal office at Durand, Mich., and was operating a line of railroad partly in Michigan and partly in Ohio. Quintard and other defendants, who were not served except as above stated, were citizens and residents of New York, and held stock in the railroad corporation. It also

appeared by agreement of counsel that the railroad company had an office in New York City, where the stockbooks were kept and transfers made; that it had a terminal office in Toledo, Ohio, where most of its administrative and operative offices were kept, but its corporate headquarters were at Durand, Mich. The court held that the situs of corporate stock for any purpose must be either the domicile of the corporation or that of the owner, and, among other things, said: "It is impossible to find a location within Ohio of the shares of stock of a Michigan corporation belonging to nonresidents of Ohio." Page 88. The question is elaborately discussed in all its various phases, some applicable, and others not, to the facts of this case. At the close of the discussion Judge Hammond said:

"I must confess that there is difficulty in dealing with the logical bearing of the fact that a large part of the corporate property is in Ohio, and that, if this corporation is amenable to suit in Ohio by general process, which is notice to it for all purposes of process, and may be garnished as to things in its hands and under its control as domestic corporations may be, notice about its shares delivered in Ohio is quite as effectual qua notice as if delivered in Michigan for the excitation of its own action in the premises; that after such notice it may do practically, as to those shares, either by way of notice to its shareholder or by way of its dealing with them, anything it might do if the same notice were lodged across the line; and that there is a good deal of barren technicality about the situs of such property, and its shifting from one place to another, as may be convenient for the uses that may happen to be wanted for a situs for it. Yet I am convinced that the soundest principles of public policy, private justice, and international or interstate comity and obligation require that shares of stock shall be subjected in invitum, as against an owner not served with process personally, only in the state which created the stock and regulates its incidents by its own laws, and has the sole right to declare how and under what circumstances it shall be liable to judicial process operating alone upon the stock, and not upon the owner."

The service of the subpœna, as made upon the defendants who have specially appeared, must be dismissed. It is so ordered.