UNITED STATES FREEHOLD LAND & EMIGRATION CO. v. GALLEGOS
et al.

(Circuit Court of Appeals, Eighth Circuit.   October 17, 1898.)

No. 1,060.

1. CIRCUIT COURT OF APPEALS—JURISDICTION—QUESTION OF JURISDICTION OF CIRCUIT COURT.

Where a demurrer, challenging the jurisdiction of the circuit court, and also the sufficiency of the facts alleged in the bill to constitute a cause of action, is sustained on the latter ground, an appeal by the plaintiff lies to the circuit court of appeals, which may determine the question of jurisdiction, or certify the same to the supreme court.

2. JURISDICTION OF FEDERAL COURTS—SUIT BY CORPORATION ORGANIZED UNDER ACT OF CONGRESS.

An allegation in a bill that the complainant is a corporation organized under an act of congress makes the case one arising under the laws of the United States, and confers jurisdiction upon a federal court.[1]

3. SUIT TO ENJOIN TRESPASS—SUFFICIENCY OF BILL — APPROPRIATION OF WATERS OF STREAM.

A bill to enjoin a continuing trespass on the lands of complainant, which alleges that complainant is the owner of all the land on both sides of a navigable stream, and has for many years been in the open and notorious possession and use of the stream and both banks thereof, and that defendants, under an unfounded claim of right to divert the waters of said stream for domestic and irrigating purposes, have diverted and still continue to divert large quantities of such water from the stream, to the damage of complainant's lands, states a good cause of action under the common law; nor is it rendered insufficient by the fact that it does not allege that complainant has appropriated the waters of the stream to a beneficial use, and the constitution and laws of the state give the right to such use to the prior appropriator, since it does not appear from the bill that defendants come within the protection of such provisions, and their rights thereunder can only be brought in issue by an affirmative defense.

4. SAME—RIGHT TO ENJOIN TRESPASS.

A bill which discloses a continuing trespass on the lands of complainant by a large number of defendants, and a constant and wrongful diversion of water from a stream thereon, which is continually depreciating their value, is sufficient to entitle the complainant to an injunction against such trespass.

5. SAME—HEARING ON DEMURRER—DEFENSE NOT DISCLOSED BY RECORD.

A state statute providing for suits to determine the respective rights of claimants to the waters of a stream, and forbidding the issuance of an injunction affecting the distribution of water in accordance with a decree in such a suit, cannot be invoked in support of a demurrer to a bill for an injunction which does not disclose the existence of any decree affecting the rights of the parties.

Appeal from the Circuit Court of the United States for the District of Colorado.

This is an appeal from a decree sustaining a demurrer to and dismissing a bill to restrain the appellees from diverting from their natural channel any of the waters of the Culebra river, in the state of Colorado, other than such as they may show themselves lawfully entitled to for irrigation and domestic purposes.   The bill contains an averment of these facts:   The appellant, the United States Freehold Land & Emigration Company, is a corporation organized under an act of congress approved on July 8, 1870 (16

---

[1] As to jurisdiction of federal courts in suits by or against federal corporations, see section 7 of note to Bailey v. Mosher, 11 C. C. A. 314.

Stat. 192). On December 30, 1843, the governor of the department of New Mexico granted to Louis Lee and Narciso Beaubien a tract of land containing nearly 1,000,000 acres, which included all the land on both banks of the Culebra river, from its source to its mouth; and on January 12, 1844, they were placed in possession of this land. By the treaty of Guadalupe Hidalgo, which took effect on July 30, 1848, the department of New Mexico, which included the land comprised in this grant, was ceded to the United States, and they agreed to recognize and protect all private rights and titles in existence at the date of cession. By "An act to confirm certain private land claims in the territory of New Mexico," approved June 21, 1860, the United States confirmed this grant to Charles Beaubien, who had by inheritance and by mesne conveyances succeeded to the rights of the original grantees. The appellant has succeeded by subsequent conveyances to all the rights of Charles Beaubien in the most southerly 500,000 acres of this grant, with the exception of certain small tracts donated by him for town sites and similar purposes. The Culebra river has its source and flows its entire length through these lands of the appellant, and it is the owner of the lands on both banks thereof, from the source to the mouth of this river. Ever since January 12, 1844, the appellant and its grantors, according to the averments of the bill, have "been in the actual, open, and notorious use, occupation, and enjoyment of said premises, embracing said Culebra river and both banks thereof, from its source to its mouth, under claim and color of title thereto, and during said entire period have paid all taxes lawfully levied on said premises. The waters of said stream are of great value to your orator, as the means of irrigation of the lands of your orator adjoining and in the vicinity of said stream, and for other purposes. The waters of said stream are insufficient, as your orator is informed and believes, for the purpose of irrigating all the lands of your orator to which the same may be diverted; and, without such water for irrigation and domestic purposes, said lands are greatly depreciated in value, and are rendered unavailable, except for grazing stock in limited numbers." The appellees, Diego Gallegos and others, "as owners of the San Luis People's ditch, have diverted and still continue to divert from the natural channel of said stream, and without the consent of your orator, large quantities of the water of said stream, which water so diverted by defendants is used or wasted by them, and is not returned to said stream, but is wholly lost to your orator, to its (your orator's) manifest wrong, damage, and injury. And your orator further shows, in information and belief, that the said defendants and their confederates, associated together as the owners of the said San Luis People's ditch, without the consent of your orator claim the right to divert and use for domestic and irrigation purposes a very large quantity of water from said Culebra river, to wit, 23 cubic feet per second of time, and more than sufficient water for the irrigation of nine hundred acres of land, and for domestic purposes, whereas, your orator charges the contrary thereof to be true, and that said defendants and their confederates are not entitled to any water from said stream for said purposes, and that twenty-three cubic feet of water per second of time is greatly more than sufficient for the reasonable and proper irrigation of said quantity of land, and for domestic purposes in connection therewith, and greatly more than has ever at any one time been used by defendants for such purposes; and your orator further charges that no such quantity of land has ever at any one time been irrigated from the waters diverted by said San Luis People's ditch from the said Culebra river. That the value of the water rights in controversy in this action exceeds the sum of $2,000." The court below sustained a demurrer to this bill on the ground that it contained no allegation that the appellant had appropriated the water of the Culebra river to a beneficial use prior to the time when the appellees diverted it.

Charles J. Hughes, Jr., for appellant.
Charles C. Holbrook, for appellees.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge (after stating the facts). A motion was made to dismiss this appeal because the jurisdiction of the circuit court was challenged by the demurrer. This, however, was not all that was done by this demurrer. It raised not only the question of jurisdiction, but also the question of the sufficiency of the allegations of the bill to constitute a cause of action on the merits. The motion must therefore be denied, because the case falls within that class concerning which the supreme court holds:

"If the question of jurisdiction is in issue, and the jurisdiction sustained, and then judgment or decree is rendered in favor of the defendant on the merits, the plaintiff, who has maintained the jurisdiction, must appeal to the circuit court of appeals, where, if the question of jurisdiction arises, the circuit court of appeals may certify it." U. S. v. Jahn, 155 U. S. 109, 114, 15 Sup. Ct. 39, 41.

The power to certify, as was said in the same case at page 113, 155 U. S., and page 40, 15 Sup. Ct., implies the power to decide this question of jurisdiction; and, as it does not appear to be difficult or doubtful, we proceed to consider it. It is contended that the circuit court had no jurisdiction, because the bill contains no allegation of the diverse citizenship of the parties, or of any other jurisdictional ground. But it has an averment that the appellant is a corporation organized under an act of congress (16 Stat. 192), and that fact makes this a case "arising under the laws of the United States," and confers jurisdiction upon the federal court. 25 Stat. 433, c. 866; 1 Supp. Rev. St. p. 611; Railway Co. v. Myers, 115 U. S. 1, 5 Sup. Ct. 1113.

We turn therefore to a consideration of the sufficiency of the averments of the bill to constitute a cause of action. It is insisted on behalf of the appellant that by virtue of the Mexican grant, and its confirmation by act of congress in 1860, the Freehold Company acquired the rights of a riparian owner to the waters of the Culebra river, which is not a navigable stream, according to the settled rules of the common law, and that a diversion of these waters by the appellees is a continuing trespass, against which it is entitled to the injunction it seeks. Counsel for the appellees contend, on the other hand, that the common law upon this subject is inapplicable to the arid region in which this land is situated, that the rights of riparian owners there are not governed by its rules, and that it is, and always has been, the law in the country now included in the state of Colorado that, in the absence of express statutes to the contrary, the first appropriator of water from a natural stream to a beneficial purpose has, with the qualifications contained in the constitution of that state, a prior right to the water, to the extent of such appropriation. The question is of serious import, and the effects of its decision must be grave and far-reaching. The opinion which determines it, or intimates the views of this court upon it, ought not to be delivered in a case in which its decision is unnecessary, and a careful examination and analysis of the bill in this case have led us to the conclusion that it does not fairly present this issue. Accordingly, we deem it our duty to refrain from considering or expressing our opinion upon it, and nothing that is said in this opinion is intended to ex-

press or intimate our views concerning it. Conceding all that the counsel for the appellees claim,—conceding that his contention is sound,—the charges of this bill seem to be sufficient to warrant the relief it seeks, or an answer on the part of the appellees. It avers that the appellant and its grantors have been the owners of the banks of this stream since 1844, and that during all this time they have been, and still are, in the "actual, open, and notorious use, occupation, and enjoyment of said premises, embracing said Culebra river and both banks thereof." It alleges that the appellees claim the right to divert from this stream and to use 23 cubic feet of water per second for domestic and irrigation purposes, that they are not entitled to any water from this stream for those purposes, and that they have diverted and are diverting or wasting large quantities of the waters of this river, which are entirely lost to the appellant, to its damage. This is all the bill contains which goes to show any appropriation of the water by the appellees, and it certainly comes far short of either averring or admitting a lawful prior appropriation by any of them. Under the law of prior appropriation, which the appellees invoke, one may not take water to waste, or to apply to every whimsical purpose he. chooses. He cannot acquire any right. of appropriation, unless he applies, or honestly intends to apply, the waters he takes to a beneficial use; and even then he may not appropriate more than is necessary for that use. Thomas v. Guiraud, 6 Colo. 530, 532; Larimer Co. R. Co. v. People, 8 Colo. 614, 616, 9 Pac. 794. The bill does not admit or show that the appellees have any land which they irrigate or intend to irrigate with the waters they divert, or that they supply or intend to supply those who have. It neither admits nor avers that they either have applied or intend to apply any of it to a domestic or any other beneficial use, or that they have ever supplied it to those who have done so, or who intend to do so. Its allegations in this behalf are simply that the appellees make an unfounded claim to a right to divert and use this water, and that in pursuance of that claim they are wrongfully taking large quantities of it, to the serious damage of the appellant. Why is not this the statement of a good cause of action? It is claimed that it is not, because the appellant has alleged no appropriation on its part, and it is said that without such an allegation the bill shows no right to prevent diversion by others. Is this contention sound, however? Concede, for the purpose of the disposition of the demurrer, that the riparian owner may not restrain the diversion of water from a natural stream by one who has appropriated it, or is about to appropriate it, for irrigation or domestic use. Has he no rights or remedies against a trespasser who wrongfully diverts to no beneficial use, under an unfounded claim that he is entitled to it for some such use? Must he first appropriate the water which flows through his land to some beneficial use, before he can restrain a trespasser from leading it across and away from his land, and applying it to his own use, or wasting it without right? That is the question which this bill presents, and it is susceptible of but one answer, either under the common law, or under the constitution and statutes of the state of Colorado. The appellant owns all the land on both banks of this river.

Regardless of its right to the water, it has the undoubted right to the undisturbed and exclusive possession of its land; and the appellees can divert no water without entering upon and leading it across this land, and committing a continuing trespass upon it. By the rules of the common law, the appellant has the right to restrain the diversion of the flow of the water of this river from its natural channel, as against all the world. By the constitution and statutes of Colorado, it has the same right, although it never has appropriated any of the water to a beneficial use, as against every one but lawful prior appropriators; and, as the appellees are not such, it must have this right as against them. The constitution and statutes of Colorado expressly provide that, while those whose lands do not border upon a stream have the right of way across the lands upon its borders for the purpose of constructing and maintaining a ditch, yet they can exercise that right only by condemnation, and the payment of just compensation therefor. Const. Colo. art. 16, §§ 5–7; 1 Mills' Ann. St. 1891, §§ 2256, 2260, 2434. The result is that according to the averments of this bill the appellees are trespassers upon the land of the appellant, whether the common law or the statutes of Colorado govern their rights. It may be that they have condemned, or obtained by prescription or otherwise, a right of way for a ditch across the lands of the appellant; it may be that they have made a lawful prior appropriation of some of the waters of this stream,—as their counsel claims. If so, they must plead and prove the facts which establish this claim, before they can invoke our decision as to their existence or effect. They do not appear from the statements contained in this bill, and we cannot conjecture what they are.

It is insisted on behalf of the appellees that the bill is insufficient, because it fails to show their insolvency, or irreparable injury to the appellant. It discloses a continuing trespass, however, upon the lands of the Freehold Company, by 28 persons, and constant and wrongful diversion of water through those lands, which is continually depreciating their value. These facts, if established,—and they are admitted here,—are certainly sufficient, on well-settled principles, to entitle the complainant to the relief it seeks. A continuing trespass upon real estate, or upon an interest therein, to the serious damage of the complainant, warrants an injunction to restrain it. A suit in equity is generally the only adequate remedy for trespasses continually repeated, because constantly recurring actions for damages would be more vexatious and expensive than effective. 2 Beach, Inj. §§ 1129, 1146; Tallman v. Railroad Co., 121 N. Y. 119, 123, 23 N. E. 1134; Uline v. Railroad Co., 101 N. Y. 98, 122, 4 N. E. 536; Galway v. Railroad Co., 128 N. Y. 132, 145, 28 N. E. 479; Evans v. Ross (Cal.) 8 Pac. 88.

Finally it is said that the statutes of Colorado provide for a proceeding in one of the district courts of that state for the determination of the respective rights of claimants to the waters of its streams, and forbid the issue of any injunction which will affect the distribution of the water adversely to the rights established by the final decree in that proceeding. 1 Mills' Ann. St. 1891, § 2434. It is suggested

in the brief of counsel for the appellees that the rights of the parties to this suit have been adjudicated by such a decree, but there is no reference to or admission of that fact in the record in this case; and, in a consideration of the sufficiency of the bill, the question of the existence or effect of such a decree is in no way presented. There is no presumption of law or fact that any court has rendered such a decree, and if it exists, and the appellees rely upon it, they must plead and prove it as an affirmative defense before any court can consider it. The motion to dismiss the appeal is denied, the decree is reversed, and this case is remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.