## WHELPLEY v. GROSVOLD.

(Circuit Court of Appeals, Ninth Circuit. April 1, 1918. Rehearing Denied May 13, 1918.)

No. 3027.

1. Public Lands ⊂⇒7—Islands—Authority of Secretary of Treasury to Lease.

Under Act July 27, 1868, c. 273, § 6, 15 Stat. 241 (Rev. St. § 1956 [Comp. St. 1916, § 8850]), giving the Secretary of the Treasury power to authorize the killing of fur-bearing animals within the limits of Alaska Territory, Act March 3, 1879, c. 182, § 1, 20 Stat. 383 (Comp. St. 1916, § 6943), giving the Secretary power to lease certain unoccupied and unproductive lands of the United States, and Act May 14, 1898, c. 299, § 10, 30 Stat. 413 (Comp. St. 1916, § 5091), declaring that the homestead laws of the United States shall be extended to the district of Alaska, but that the Annette, or Pribilof Islands, and the islands leased or occupied for the propagation of foxes, be excepted, the Secretary of the Treasury had authority to lease unoccupied and unproductive Alaska islands for the propagation of foxes.

2. Public Lands ⊂⇒7—Lease—Executive Powers.

Though Act Feb. 14, 1903, c. 552, § 7, 32 Stat. 828 (Comp. St. 1916, § 858), transferring to the Department of Commerce and Labor the jurisdiction and control possessed and exercised by the Department of the Treasury over the fur-seal, and salmon and other fisheries of Alaska, did not confer on the Department of Commerce and Labor the power to lease unoccupied lands, yet in view of the early recognition of the power of the President as head of the respective executive departments to assign to the departments powers vested in the executive, the presidential

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

order transferring to the Secretary of Commerce and Labor the authority of the Secretary of the Treasury to lease certain islands in Alaska for the propagation of foxes was valid: the power to lease being an executive power.

3. PUBLIC LANDS ⬉⟿6—STATUTES—APPLICABILITY.

Act May 17, 1884, c. 53, 23 Stat. 24, providing a civil government for Alaska, and enacting (section 8) that the Indians or other persons in the district shall not be disturbed in the possession of lands actually in their use or possession, recognizes only the rights of such Indians or other persons who were in possession of lands at the time of the passage of the act, and cannot be invoked by one who did not enter into possession of Alaska lands until afterwards.

4. EVIDENCE ⬉⟿258(2)—ADMISSIONS—AGENTS.

Where defendant in his answer asserted that he was the agent of a corporation, evidence as to a conversation between plaintiff and another representative of the corporation, concerning the matter involved in the controversy, was properly received.

5. INJUNCTION ⬉⟿48—REPEATED TRESPASSES.

Where defendant repeatedly trespassed on an island in which plaintiff had a leasehold interest, and which he used for the propagation of foxes, and the damages for subsequently threatened trespasses would be difficult of ascertainment, plaintiff is entitled to an injunction, although not to damages, as defendant, on the occasion of his previous trespasses, merely removed his own foxes from the island.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Suit by Andrew Grosvold against Frank E. Whelpley. From a decree for plaintiff, defendant appeals. Affirmed.

Little Koniuji Island, one of the Shumagin group, lying south of the Alaska peninsula, was occupied by Lawrence Reid from about 1903 to 1913 for the purpose of raising blue foxes, which had been brought and placed upon the island. Until 1900 he paid to the Treasury Department $100 a year for permission to use the island for the purpose indicated. In 1900 the Treasury Department ceased collecting the tax. On May 13, 1913, Reid, for the sum of $4,000, sold to the appellant his right in and to the use of the island and the foxes which were then thereon. In January, 1914, the government proposed to lease to the highest bidder Little Koniuji Island and certain other islands, each for a period of 5 years from July 1, 1914, for the propagation of foxes, for an annual rental of not less than $200 a year. One Williams, a partner of the appellant, tendered a bid, as did the appellee, and, the latter being the higher bidder by $5 per year, received on July 30, 1914, from the Department of Commerce and Labor a lease of Little Koniuji Island for the period of five years.

On March 20, 1916, the appellee brought a suit against the appellant, alleging that on or about November 5, 1915, the appellee stocked the island with seven pairs of blue foxes and placed a keeper in charge; that on December 16, 1915, the appellant entered upon the island without the appellee's consent and trapped many of the foxes and appropriated the same, and that three days later he again entered upon the island and trapped and appropriated many of the foxes thereon without the appellee's consent; and that on numerous occasions thereafter he has repeated such trespasses and appropriation of the foxes upon the island, and threatens to continue such trespasses, and to do injury to the appellee, if he in any wise interferes with such trespasses, and that unless restrained by an injunction he will continue to commit other trespasses and trap other foxes as he threatens to do. The prayer was for an injunction and for damages.

A demurrer to the complaint was overruled, and the appellant answered,

⬉⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

alleging that the foxes which he had removed from the island were his property, held by him in trust for the Provincial Fox Company, Limited, and further alleging that the appellee's lease was null and void. The judgment of the court was that the appellant be enjoined from disturbing the appellee's possession, and that the appellant have judgment against the appellee for his costs.

Donohoe & Dimond, of Valdez, Alaska, J. Lindley Green, of Seard, Alaska, and Robert W. Harrison, of San Francisco, Cal., for appellant.

L. L. James, Jr., and Morford & Finnegan, all of Seward, Alaska, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The principal question on the appeal is whether or not the Department of Commerce and Labor had authority to execute the lease. On July 27, 1868 (Rev. Stat. § 1956), Congress gave the Secretary of the Treasury power to authorize the killing of any fur-bearing animal except fur seals within the limits of Alaska Territory or in the waters thereof, "under such regulations as he may prescribe." By the act of March 3, 1879 (20 Stat. 383), power was given the Secretary of the Treasury at his discretion to lease, "for a period not exceeding five years, such unoccupied and unproductive property of the United States under his control, for the leasing of which there is no authority under existing law." This act is similar in its scope to Act July 28, 1892, c. 316, 27 Stat. 321 (Comp. St. 1916, § 6944), authorizing the Secretary of War to lease property "under his control," and the question arises whether the island in question was under the control of the Secretary of the Treasury. We are inclined to the view that it had been placed under his control by the act of July 27, 1868; but, however that may be, we think it clear that the act of May 14, 1898 (30 Stat. 409, 413), recognizes and ratifies executive authority through the Secretary of the Treasury to lease the island in question. It was thereby enacted that the homestead laws of the United States, and all rights incident thereto, be extended to the district of Alaska:

"Provided, that the Annette, Pribilof Islands, and the islands leased or occupied for the propagation of foxes be excepted from the operation of this act."

[2] It is contended, however, that, assuming that the Secretary of the Treasury had the power to lease, there has been no lawful transfer of that authority to the Department of Commerce and Labor. Section 7 of the act of February 14, 1903 (32 Stat. 825, 828), transfers to that department "the jurisdiction, supervision and control now possessed and exercised by the Department of the Treasury over the fur-seal, salmon and other fisheries of Alaska"; but there was no express transfer of the authority to lease unoccupied land. On February 2, 1904, an executive order was promulgated upon the recommendation of the Secretary of the Treasury and the Secretary of Commerce and Labor transferring to and vesting in the Secretary of Commerce and Labor the authority of the Secretary of the Treasury

to "lease certain islands in Alaska for the propagation of foxes, and all duties and powers pertaining thereto." The appellant asserts that the President had no power to make the order, and that he thereby assumed authority over the public domain which by the Constitution had been expressly vested in Congress.

But the power to make the leases, if it exists, is executive power. It has always been recognized that the President, as the head of the respective executive departments, in the absence of any inconsistent statutory provision, has authority to assign to the heads of the departments powers which are vested in the executive. In Act July 27, 1789, c. 4, § 1, 1 Stat. 28 (Comp. St. 1916, § 300), creating the Department of State, it was provided that the Secretary of State shall perform such duties as shall from time to time be enjoined on and entrusted to him by the President, and he shall conduct the business of said department "in such manner as the President of the United States shall from time to time order or direct." Similar provisions are found in the acts creating the Departments of War and the Navy, and the omission of such provisions from acts providing for departments that were later created should not be held to indicate legislative intention to withhold similar powers as to those departments. We hold, therefore, that, the executive authority to lease the island in question having been recognized and ratified by the act of May 14, 1898, it was within the power of the President to vest that authority in the Department of Commerce and Labor, as was done in this case. 7 Ops. Attys. Gen. 462, 469; 25 Ops. Attys. Gen. 497.

[3] The appellant claims the protection of Act May 17, 1884, c. 53, 23 Stat. 24, providing a civil government for Alaska, wherein it was enacted that:

"The Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation, or now claimed by them."

But that act recognizes only the rights of "such Indians or other persons as were in possession of lands at the time of the passage of the act." Russian-American Co. v. United States, 199 U. S. 570, 576, 26 Sup. Ct. 157, 50 L. Ed. 314. It does not appear that the appellant or any of his predecessors in interest was in possession of the island or claimed it in the year 1884.

[4] It is assigned as error that the appellee was permitted to testify to a conversation had on March 18, 1914, with one Colwell, who represented the Fundy Fox Company, in which it was agreed that Colwell should be allowed until September 1, 1914, to take off personal property from the island, in consideration of which the property thereafter remaining should belong to the appellee. It was objected that no showing was made that Colwell was the agent of the appellant. In his answer to the complaint the appellant had pleaded that the Provincial Fox Company was the owner of all the property which he had purchased from Reid, and that he, the appellant, represented said company, and owned one-fifth of the capital stock thereof. At that time the appellant was also a member of the Fundy Fox Company, a limited partnership, which company was the agent of the Provincial Fox

Company, and seems to have advanced the purchase money which was paid to Reid. Another member of the Fundy Fox Company was Williams, and he testified that Colwell was sent to take possession of Little Koniuji Island in the place and stead of the appellant, and that the Provincial Fox Company instructed Colwell to take charge of their interests on the island. The evidence was sufficient, therefore, to show, prima facie at least, that Colwell was the agent of both the Fundy Fox Company and the Provincial Fox Company.

[5] The complaint alleges trespasses, repeated and threatened to be repeated, the effect of which would be to destroy the value of the appellee's leasehold interest, and for which damages were necessarily difficult of ascertainment and could be obtained, if at all, only by a multiplicity of suits. In such a case a suit in equity for an injunction is the permissible and the only adequate remedy. 22 Cyc. 826, 827; Joyce on Injunctions, § 1127; Nichols v. Jones (C. C.) 19 Fed. 855; United States Freehold, etc., Co. v. Gallegos, 89 Fed. 769, 32 C. C. A. 470. The facts entitling the appellee to an injunction were not only sufficiently pleaded in the complaint, but were found by the court and are shown by the record, and although the trial court found that the appellant had removed from the island only his own foxes, and on that account denied the appellee damages, it was found as facts that the appellant threatened to continue the trespasses and continue to remove foxes, whereas he had removed all that belonged to him. Under those circumstances, the injunction was properly issued.

The decree is affirmed.